**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

BETTY HALLETT,
      Appellant,

      v.

DEPARTMENT OF AGRICULTURE,
      Agency.

DOCKET NUMBER
SF-0752-16-0233-B-1

DATE: January 29, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Betty Hallett, Round Rock, Texas, pro se.

Joshua N. Rose and Cliff Lockett, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

*The Board members voted on this decision before January 20, 2025.

**FINAL ORDER**

In a June 9, 2022 Remand Order, the Board did not sustain the agency's enforced leave action and remanded this appeal to the administrative judge to address the appellant's affirmative defenses. The appellant has now filed a petition for review of the remand initial decision that, consistent with the Board's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

remand order, did not sustain the agency's enforced leave action but denied the appellant's affirmative defenses. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the initial decision's finding that the enforced leave action is NOT SUSTAINED, and REVERSE the initial decision's finding that the appellant did not prove her affirmative defenses of disability discrimination based on a failure to accommodate and equal employment opportunity (EEO) retaliation.

## BACKGROUND

At all times relevant to this appeal, the appellant was employed as a GS-12 Supervisory Public Health Veterinarian (PHV), assigned to slaughter and processing plants with the agency's Food Safety Inspection Service (FSIS). *Hallett v. Department of Agriculture*, MSPB Docket No. SF-0752-16-0233-I-1, Initial Appeal File (IAF), Tab 5 at 7. Beginning in or around 2011, the appellant began to suffer from tinnitus and associated hearing loss, with her symptoms increasing when exposed to high-frequency noises, such as those created by the splitting saws, which were consistently used in large processing plants. IAF, Tab 12 at 33-37, Tab 49-1, Hearing Recording (HR) (testimony of the appellant). On November 8, 2011, the appellant requested reasonable accommodation for her tinnitus and hearing loss, explaining that her tinnitus increased when she was at her duty station and requesting that she be allowed to stop working by the splitting saw and work at another duty station. IAF, Tab 12 at 33, 38-39. The agency denied the appellant's reasonable accommodation request, claiming that her impairment did not meet the definition of a disability. *Id*. at 42.

After the denial of her reasonable accommodation request, the appellant took proactive steps to minimize her presence in large processing plants and exposure to high-frequency noises. HR (testimony of the appellant). For instance, the appellant bought custom earplugs and earmuffs to limit her noise exposure. *Id*.; IAF, Tab 12 at 23-24. Then, in or around December 2012, the

appellant transferred to Creston Valley, a mini-circuit assignment[2] in which she oversaw a group of smaller slaughter and processing plants that were less noisy than the larger processing plants. IAF, Tab 12 at 97-98, Tab 16 at 21, HR (testimony of the appellant). However, even though the appellant sought out the mini-circuit assignment specifically to minimize her time in large processing plants, the appellant's supervisor continued to assign her to large processing plants on "relief" assignments. IAF, Tab 12 at 100-01, Tab 49-1, HR (testimony of the appellant), Tab 49-4, HR (testimony of the appellant's supervisor).

On July 21, 2014, while working on a relief assignment at a large processing plant, the appellant began experiencing severe ringing in her ears. IAF, Tab 21 at 62-63; HR (testimony of the appellant). She emailed her supervisor, explaining that the ringing in her ears had become so severe that she could not be on the kill floor while the splitting saw was running and requested that her supervisor arrange for another individual to cover the line inspectors' breaks that day.[3] IAF, Tab 21 at 56-57. The appellant's supervisor called the appellant asking her to explain what made an environment "noisy," to which the appellant responded that the "split[tting] saw, or any other high pitched 'ee-ee-ee' type of noise [] made [her] tinnitus worse." *Id*. at 62. She also explained to her supervisor that she could perform her duties at her mini-circuit assignment, explaining that, at Creston Valley, she was able to step out of the area when the splitting saw was in use, and that the other two slaughter plants she oversaw allowed her to either not be present in the trailer while the splitting saw was running or watch through glass. *Id*. However, the appellant's supervisor told her

---

[2] The mini-circuit assignment is also referred to as a patrol assignment throughout the record. *See*, *e.g.*, IAF, Tab 33 at 47.

[3] Approximately 15-minute breaks were given to each inspector on the line, during which the Supervisory PHV assigned to the plant would provide coverage in the kill room, which contained the splitting saw. HR (testimony of the appellant and her supervisor). According to the appellant, she had to spend about 3 hours giving the line inspectors breaks during relief assignments. HR (testimony of the appellant).

that it was part of her duties to give breaks to the line inspectors and stated that she could not be on duty if she could not perform her job. *Id*. The appellant took leave for the rest of the day. *Id*. at 55-56.

That same day, the appellant went to an occupational health clinic and was released with medical restrictions to limit noise exposure to under 100 decibels. *Id*. at 64. The decibel level at the appellant's office in Creston Valley was approximately 65 decibels, and the noisiest areas of the facility read at 87 decibels, all within the acceptable range. IAF, Tab 24 at 71, HR (testimony of the appellant). However, on August 12, 2014, the appellant's supervisor assigned her to a large processing plant with a noise level of approximately 95 decibels, close to the maximum decibel level. IAF, Tab 21 at 66-67, HR (testimony of the appellant and her supervisor).

The appellant returned to the occupational health clinic and received updated medical restrictions, which stated that she "needs office/desk work only, no noise exposure." IAF, Tab 12 at 102. Immediately thereafter, the appellant took scheduled annual leave for 3 weeks. *Id*. at 104; HR (testimony of the appellant). When she returned to work on September 8, 2014, the appellant's supervisor claimed that there was no position that would allow her to work in an office with no noise exposure, and that the appellant would need to take leave. IAF, Tab 12 at 104-06; HR (testimony of the appellant's supervisor). Therefore, as of September 8, 2014, the agency placed the appellant on leave without pay (LWOP) despite her objections that she could perform the essential functions of her position at Creston Valley and in her mini-circuit assignment. IAF, Tab 21 at 58-63, 72-73, Tab 33 at 47, HR (testimony of the appellant). The appellant's supervisor did not request clarification of the appellant's medical restrictions before placing her on LWOP. HR (testimony of the appellant's supervisor).

On September 11, 2014, the appellant went back to the occupational health clinic and received updated medical documentation, which stated that she should "limit noise exposure environment to 40-60 decibels," such as "normal office

noise level," but, if she "need[ed] to be in higher noise, she [should] continue to use double ear protection." IAF, Tab 12 at 109, 111. The agency nevertheless continued to prohibit the appellant from returning to work, claiming that there was no environment of less than 60 decibels, given that even noises like the air conditioner running, the ringing of phones, or a file cabinet slamming shut could raise the level above 60 decibels. HR (testimony of the appellant's supervisor).

On or around October 9, 2014, the appellant submitted a reasonable accommodation request asking for, among other things, placement in her mini-circuit assignment.[4] HR (testimony of the appellant); IAF, Tab 33 at 47. The agency denied the appellant's request for reasonable accommodation on November 7, 2014, claiming that her impairment did not meet the definition of a disability. IAF, Tab 12 at 117. Shortly thereafter, the appellant again requested reasonable accommodation, and in February 2015, the agency yet again denied the appellant's request, claiming that the appellant did not meet the definition of a disabled person. IAF, Tab 21 at 117-18. On March 26, 2015, after the appellant's Office of Workers' Compensation Programs (OWCP) claim was denied and the agency concluded there was no position within the appellant's medical restrictions, the agency ordered the appellant to return to duty, or, if she was unable to return, to resign or submit medical documentation certifying that she was incapacitated for duty.[5] *Id*. at 144-45. The appellant returned to work on March 30, 2015.[6] *Id*.; HR (testimony of the appellant).

---

[4] On the reasonable accommodation form, the appellant listed her mini-circuit assignment with "no noise exposure" as the reasonable accommodation request. IAF, Tab 33 at 47. The appellant clarified in her testimony that she wanted to be placed back in her mini-circuit assignment and not be given relief assignments to large processing plants. HR (testimony of the appellant). As the agency found that the appellant was not entitled to reasonable accommodation because she was not disabled, the agency never clarified the appellant's requested accommodations. IAF, Tab 12 at 117.

[5] In June 2014, the appellant filed an OWCP claim because she was under the mistaken belief that such a claim would result in reasonable accommodation. IAF, Tab 21 at 49-51, HR (testimony of the appellant).

The appellant filed an EEO complaint, and after receiving a final agency decision, she filed a Board appeal challenging her forced absence from September 8, 2014 to March 30, 2015. IAF, Tab 1. Initially characterizing this appeal as a constructive suspension appeal, the administrative judge held a jurisdictional hearing and issued an initial decision on July 12, 2016, finding that the appellant did not establish by preponderant evidence that the agency constructively suspended her and that the Board lacked jurisdiction over the appellant's affirmative defenses of discrimination and retaliation. IAF, Tab 53. The appellant filed a petition for review of the initial decision, and on June 9, 2022, the Board issued a Remand Order finding that the agency forced the appellant to take leave for more than 14 days, which constituted an appealable suspension, and, because the agency did not provide her with due process rights, the Board reversed the agency's enforced leave action. *Hallett v. Department of Agriculture*, MSPB Docket No. SF-0752-16-0233-I-1, Remand Order at 4-5 (Jun. 9, 2022). Because the Board had jurisdiction over the agency's enforced leave action, the Board remanded the appeal for the administrative judge to issue a decision on the merits of the appellant's affirmative defenses of race, sex, color,

---

[6] The appellant returned to work on March 30, 2015, but the next day, she took leave until April 27, 2015, when the agency then placed her on administrative leave while it searched for a vacant position within her restrictions. IAF, Tab 12 at 128. After receiving another return-to-duty order on May 7, 2015, she returned to work. *Id.* at 128-30; HR (testimony of the appellant).

national origin, and disability discrimination, as well as EEO retaliation.[7] *Id*. at 5-6.

After deciding that a supplemental hearing was not required,[8] the administrative judge issued a remand initial decision reversing the agency's enforced leave action in accordance with the Board's Remand Order but finding that the appellant did not prove her affirmative defenses. *Hallett v. Department of Agriculture*, MSPB Docket No. SF-0752-16-0233-B-1, Remand File (RF), Tab 13, Remand Initial Decision (RID). First, the administrative judge found that the appellant did not prove her claim of disability discrimination based on either failure to accommodate or disparate treatment because she was not a qualified individual with a disability. RID at 10-17. Then, the administrative judge found that the appellant made only generic claims that the agency would have treated her more favorably if she had been a non-white, non-American male, which were insufficient to prove her claims of race, national origin, and sex discrimination.[9] RID at 17-21. Regarding the appellant's EEO retaliation claim, the administrative judge found that the 6-week timeframe between the appellant's EEO activity and her placement on enforced leave was not suspicious because the

---

[7] The Board also ordered the administrative judge to determine whether the appellant raised an age discrimination claim, allow the appellant to proceed with a whistleblower reprisal claim, and provide her with the applicable burdens of proof for a whistleblower reprisal claim. Remand Order at 6-7. On remand, the administrative judge issued an order requesting that the appellant clarify whether she was raising an age discrimination claim and providing her notice of the applicable burdens of proof for a whistleblower reprisal claim. RF, Tab 3. The appellant responded that she was not raising an age discrimination claim, RF, Tab 5 at 9, and that she was "withdrawing [her] claim of reprisal for whistleblowing at this time," RF, Tab 6 at 10. The administrative judge later issued an order confirming that the appellant had withdrawn her whistleblower reprisal claim and listing the appellant's affirmative defenses as discrimination based on sex, race, color, physical disability, national origin, and EEO retaliation. RF, Tab 8 at 3-4. The appellant did not object to the administrative judge's characterization of her claims despite being afforded the opportunity to do so, *id*. at 5, and she does not challenge the characterization on review.

[8] The administrative judge provided the parties with notice that a supplemental hearing may not be needed and afforded them an opportunity to explain their positions with regards to a supplemental hearing. RF, Tab 3 at 2-3.

enforced leave was explained by the changes in her medical restrictions. RID at 21-23. The administrative judge ordered the agency to provide interim relief if either party filed a petition for review. RID at 25.

The appellant has filed a petition for review, arguing, among other things, that she could perform the essential functions of her position and that the agency refused to reasonably accommodate her and forced her to take leave. Petition for Review (PFR) File, Tab 1 at 4-24. She also asserts that the agency retaliated against her for filing an EEO complaint.[10] *Id*. at 24-28. The agency responded in opposition to the appellant's petition for review, and the appellant replied to the agency's response.[11] PFR File, Tabs 3-4.

---

[9] To the extent that the administrative judge conflated the claims of race discrimination and color discrimination, the appellant does not assert a color discrimination claim on review, and there is no evidence establishing that the appellant was discriminated against on the basis of color. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

[10] To the extent that the appellant attempts to raise a claim of whistleblower reprisal on review, PFR File, Tab 1 at 24-25, the appellant withdrew this claim in front of the administrative judge, RF, Tab 6 at 10, Tab 8 at 3-4, and did not object to the administrative judge's finding that the defense was withdrawn, despite being afforded an opportunity to do so, RF, Tab 8 at 5. Therefore, because the appellant affirmatively waived the defense below, we will not address it here for the first time. *See Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶ 18 (summarizing factors to be considered when determining whether an appellant waived or abandoned an affirmative defense, to include the degree to which the appellant pursued the defense after raising it, and whether the appellant objected to the defenses exclusion from the summary of issues to be decided).

[11] After the close of the record on review, the appellant filed a submission asserting that she has not received interim relief. PFR File, Tab 6. The agency filed a response to the appellant's submission, and the appellant filed a reply. PFR File, Tabs 7-8. The appellant did not challenge the agency's compliance with the interim relief order in her petition for review or otherwise allege that her submission was filed within 25 days of the date on which she became aware that the agency did not provide interim relief. *See* 5 C.F.R. § 1201.116(b)-(c). In any event, any noncompliance by the agency on interim relief would now be moot by virtue of our final decision ordering relief. *See Smith v. Department of the Army*, 2022 MSPB 4, ¶ 12.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant is a qualified individual with a disability.

The administrative judge found that the appellant was not a qualified individual with a disability because her medical restrictions rendered her incapable of performing the essential functions of her position while she was on enforced leave. RID at 11-16. On review, the appellant argues that she could have performed the essential functions of her job at her mini-circuit assignment while she was on enforced leave. PFR File, Tab 1 at 4-24. For the reasons set forth below, we agree with the appellant and find that she is a qualified individual with a disability.

The American with Disabilities Act (ADA)[12] provides that it is illegal for an employer to "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. Both a claim of disability discrimination based on an individual's status as disabled and a claim based on the agency's failure to reasonably accommodate that disability require that the individual be "qualified." *Haas*, 2022 MSPB 36, ¶ 28. To prove that an appellant is an individual with a disability, she must show that she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). To be a qualified individual with a disability, the appellant must show that she can "perform the essential functions of the . . . position that [she] holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8).

---

[12] The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Haas*, 2022 MSPB 36, ¶ 28. The standards under the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008, have been incorporated into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. *Id*.

The record is replete with medical documentation establishing that the appellant suffered from hearing loss, as well as tinnitus, which substantially impacted her daily life. IAF, Tab 12 at 33, 40-41, 102, 107-115. Furthermore, the governing regulations define "hearing" as a major life activity. 29 C.F.R. § 1630.2(i). Therefore, contrary to the agency's position, IAF, Tab 12 at 42, 117, Tab 21 at 117-18, the administrative judge correctly found that the appellant is a disabled individual. RID at 11. However, contrary to the administrative judge's findings, we find that the appellant is a qualified individual with a disability. RID at 16.

The administrative judge found that the appellant was not qualified because her medical restrictions required her to be in an environment of 40-60 decibels, and there was no environment within the agency that was under 60 decibels. RID at 12-16. We believe this is a mischaracterization of the appellant's medical restrictions. As of September 11, 2014, the appellant's medical restrictions stated that the "recommendation" was for the appellant to "work in an environment of no greater than 40-60 decibels of noise which would be a normal office noise level," but that if she "need[ed] to be in higher noise, she [should] continue to use double ear protection." IAF, Tab 12 at 111. Per the agency's measurements, the appellant's official duty station, Creston Valley, ranged from areas of 65 decibels in the office with the air conditioner on to 87 decibels in the cut room with the band saw or vacuum sealer running. IAF, Tab 24 at 71; PFR File, Tab 3 at 6, 9 n.9. The appellant's medical restrictions expressly contemplated a "normal office noise level," which would reasonably include an environment with a running air conditioner. IAF, Tab 12 at 111. The medical restrictions also contemplated that the appellant may need to be in environments of higher noise levels, as it stated that she should continue to wear double ear protection if in those environments. *Id*.

Therefore, we find that the appellant could have performed the essential functions of her position, even with her stated medical restrictions. This is

consistent with the appellant's own statements, as she has continuously asserted that she could perform the essential duties of her position in her mini-circuit assignment. IAF, Tab 21 at 58-63, 72-73; Tab 33 at 47, HR (testimony of the appellant). This finding is also consistent with the fact that, when the appellant returned from enforced leave in the spring of 2015, she continued to work in her position without reasonable accommodation, under the same medical restrictions that she had during her enforced leave period.[13] HR (testimony of the appellant and her supervisor); PFR File, Tab 1 at 4, 7. Stated another way, the fact that the appellant was able to successfully perform her position under the same medical restrictions after the period of enforced leave suggests that the appellant could have performed the essential functions of her position, without reasonable accommodation, during the entirety of the enforced leave period. Accordingly, we find that the appellant could have performed the essential functions of her position with or without reasonable accommodation, and therefore, she is a qualified individual with a disability.

The agency failed to engage in the interactive process of reasonable accommodation.[14]

Because the administrative judge found that the appellant was not a qualified individual with a disability, she found that the appellant did not prove that the agency failed to reasonably accommodate her.[15] RID at 16. To establish disability discrimination based on a failure to accommodate, an employee must show that: (1) she is an individual with a disability, as defined by 29 C.F.R.

---

[13] The agency does not dispute that the appellant performed the essential functions of her duties after she returned to work. The agency only claims that she could not perform her duties during the approximately 7 months of enforced leave. PFR File, Tab 3 at 8-10.

[14] On review, the appellant does not dispute the administrative judge's findings that she failed to prove her affirmative defenses of race, sex, color, or national origin discrimination. RID at 17-21. We agree with the administrative judge's findings that the appellant failed to present any evidence in support of these defenses, absent conclusory statements, and, thus, we discern no basis to disturb these findings. *Id*.

§ 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2015). As explained above, we find that the appellant proved that she is a qualified individual with a disability. Therefore, the relevant question here is whether the agency failed to provide the appellant with reasonable accommodation.

An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. 29 C.F.R. § 1630.9(a); *Miller*, 121 M.S.P.R. 189, ¶ 13. Reasonable accommodation includes modifications to the manner in which a position is customarily performed to enable a qualified individual with a disability to perform the essential job functions. *Miller*, 121 M.S.P.R. 189, ¶ 13; Equal Employment Opportunity Commission (EEOC), Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, Notice No. 915.002, 2002 WL 31994335 at *2 (Oct. 17, 2002).

Once an appellant has requested an accommodation, the employer must engage in an interactive process to determine an appropriate accommodation. *Sanchez v. Department of Energy*, 117 M.S.P.R. 155, ¶ 17 (2011). Here, the agency did not engage in the interactive process of reasonable accommodation.

First, the agency erroneously determined that the appellant did not meet the definition of disabled and was therefore not entitled to reasonable accommodation. IAF, Tab 12 at 42, 117, Tab 21 at 9-10, 117-18. On that basis, the agency did not believe it was required to engage in the interactive process

---

[15] The administrative judge also found that the appellant failed to establish a claim of disability discrimination based on disparate treatment. RID at 16-17. While we find that the appellant is a qualified individual with a disability, we decline to revisit the remainder of the claim as the appellant does not contest the outcome of this claim on review.

and, therefore, effectively concedes that it did not engage in the formal reasonable accommodation process. IAF, Tab 12 at 42, 117, Tab 21 at 9-10, 117-18. Outside of that formal reasonable accommodation process, the appellant's supervisor sent an email to the appellant on November 19, 2014, asking for clarification on the 40-60 decibel range, and the agency conducted a vacant, funded position search resulting in an offer of a GS-5, GS-7, or GS-9 level position. IAF, Tab 12 at 128, Tab 50-1, HR (testimony of the Deputy District Manager). Even though the agency did not engage in the formal reasonable accommodation process, we nevertheless have considered whether these actions constitute an attempt to accommodate the appellant outside of the formalized process. For the reasons stated below, we do not find that these actions prove that the agency engaged in the interactive process necessary to determine a reasonable accommodation.

Regarding the November 19, 2014 email, the appellant's supervisor asked whether the "ambient noise level needs to be 40-60 [decibels] or that it must be reduced to 40-60 [decibels]." IAF, Tab 21 at 107. Even though the appellant's response was not helpful, as she merely repeated her written medical restriction, the appellant's supervisor responded simply "[o]k. Thank you." *Id*. The appellant's supervisor did not ask any other questions or make any other attempt to clarify or seek additional information at that time. Nor does it appear from the record that the appellant's supervisor sought clarification at any other point regarding the appellant's medical restrictions while she was on enforced leave. That lack of engagement is particularly concerning given that, as recently as July and August 2014, the appellant told her supervisor that it was the large processing plants and high-frequency noises, such as the splitting saw, that exacerbated her condition, but she could still perform the essential functions at her mini-circuit assignment. IAF, Tab 12 at 97-98, Tab 21 at 58-63, 72-73, HR (testimony of the appellant).

Next, regarding the vacant, funded position search, the agency admits that this search was undertaken pursuant to the Federal Employees Compensation Act (FECA), which requires agencies to consider temporary assignments that allow employees receiving OWCP benefits to work while recovering from a work-related injury or illness. IAF, Tab 51 at 5-6, 8. The appellant never received OWCP benefits and, therefore, FECA is not applicable. Nevertheless, the standards under FECA are substantively different than the standards under the ADA, and the completion of the vacant, funded search does not establish that the agency met its obligations with respect to the reasonable accommodation process required by the ADA. Furthermore, "[r]eassignment is the reasonable accommodation of last resort," and absent evidence that there was no effective reasonable accommodation that would allow the appellant to perform the essential duties of her current position, the agency's offer of a lower-graded position is not evidence, in and of itself, that it engaged in the interactive process of reasonable accommodation. EEOC Notice 915.002, 2002 WL 31994335 at *20; *see Angel v. Office of Personnel Management*, 122 M.S.P.R. 424, ¶ 9 (2015) (describing reassignment as the reasonable accommodation of last resort, which is required only after it has been determined that there are no effective accommodations that would enable the employee to perform the essential duties of her current position or that all other reasonable accommodations would impose an undue hardship).

In summary, the record is clear that the agency did not engage in the formal reasonable accommodation process because it erroneously found that the appellant was not disabled. IAF, Tab 12 at 42, 117, Tab 21 at 9-10, 117-18. Furthermore, we do not find that a single email exchange with the appellant's supervisor 2 months after the appellant was placed on enforced leave, or a vacant, funded position search under an inapplicable statute resulting in offers of lower-graded positions, sufficiently establishes that the agency acted outside that formal avenue to engage in the reasonable accommodation process. Stated another way, we find that the record establishes that the agency failed to engage

in the interactive process to determine an effective accommodation for the appellant.

<u>The agency's failure to engage in the interactive process resulted in a failure to provide reasonable accommodation.</u>

An agency's failure to engage in the interactive process alone does not violate the Rehabilitation Act; instead, the appellant must show that the failure resulted in no reasonable accommodation being provided. *Sanchez*, 117 M.S.P.R. 155, ¶ 18. In other words, the appellant must establish that an accommodation existed and was reasonable. *See Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 17 (2014) (finding that an appellant's mere assertion that the agency could have allowed him to use specific software was insufficient to establish his burden that an accommodation existed and was reasonable); *see also Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1137-39 (9th Cir. 2001) (finding an employer liable for denial of reasonable accommodation when it failed to engage in the interactive process which caused the denial of an effective accommodation).

Here, the appellant consistently identified an effective accommodation, i.e., to be assigned to her mini-circuit assignment. IAF, Tab 21 at 58-63, 72-73; Tab 33 at 47, HR (testimony of the appellant). The agency, however, forced the appellant to remain on leave, claiming that there was no environment that met the appellant's restrictions, given that even normal office noises, such as phones ringing, file cabinets closing, or air conditioners running could raise the noise level above 60 decibels. HR (testimony of the appellant's supervisor); PFR File, Tab 3 at 6, 9 n.9. As explained in detail above, we disagree with the agency's assertion and find that the appellant could have complied with her medical restrictions and still have worked in her mini-circuit assignment. Furthermore, the appellant has consistently claimed that the mini-circuit assignment accommodated her disability, and she provided detailed testimony as to how it did so. For instance, according to the appellant, the smaller plants in the mini-circuit

assignment did not require as much physical supervision as the large processing plants and allowed the line inspectors to cover their own breaks, which limited the amount of time she had to spend near the saws when they were running. HR (testimony of the appellant). She also explained that some of the smaller facilities used a band saw and not a splitting saw normally used at larger processing plants, which emitted the high-pitched noise that exacerbated her tinnitus. *Id*. Additionally, per the appellant, the mini-circuit assignment had a significant amount of office work and required travel between the plants; therefore, she was less exposed to the noisier environments. *Id*.

Accordingly, we find that the appellant identified an accommodation that was both effective and reasonable, namely, to allow her to continue working in her mini-circuit assignment without returning to large plants for "relief assignments." IAF, Tab 21 at 58-63, 72-73; Tab 33 at 47, HR (testimony of the appellant). Because the agency failed to engage in the interactive process of reasonable accommodation, and the appellant has identified an effective and reasonable accommodation, we find that the appellant proved her claim of disability discrimination based on a failure to reasonably accommodate.

The appellant established her claim of EEO retaliation.

In the remand initial decision, the administrative judge found that the appellant did not establish her claim of retaliation because her placement on enforced leave was the result of a change in her medical restrictions, and, thus, the 6-week timeframe between the appellant's EEO activity and the enforced leave action was not suspicious. RID at 22-23. We disagree. Instead, when viewing the record as a whole, we find that the evidence contradicts the agency's explanation for its enforced leave action, rendering it unworthy of credence. Coupled with the suspicious timing of the enforced leave action, we find that EEO retaliation was a but-for cause of the agency's action.

Claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims.

*Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 30. To obtain full relief under 42 U.S.C. § 2000e-16, including status quo ante, compensatory damages, or other forms of relief related to an employment decision, the appellant must show that such discrimination or retaliation was a "but-for" cause of the employment outcome. *Pridgen*, 2022 MSPB 31, ¶ 22; *Wilson v. Small Business Administration*, 2024 MSPB 3, ¶ 18. The "but-for" standard generally requires a showing that the harm would not have occurred in the absence of—that is, but for—the discriminatory conduct. *Wilson*, 2024 MSPB 3, ¶ 15. The methods by which an appellant may prove a claim of discrimination or retaliation are: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic"; (b) comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment"; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination" (i.e., the burden-shifting standard under *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973)); and (3) some combination of direct and indirect evidence. *Pridgen*, 2022 MSPB 31, ¶ 24.

In cases such as this, which involve at least some circumstantial evidence, the Board has set forth two methods by which an appellant may establish but-for causation, i.e., the pretext framework or the mixed-motive framework. *Wilson*, 2024 MSPB 3, ¶¶ 15-19. Under the pretext framework, an appellant may use the *McDonnell Douglas* evidentiary framework to establish that Title VII discrimination or retaliation was a but-for cause of the challenged personnel action by showing that the employer's reason is pretextual, or by showing that it

is more likely than not that the agency was motivated by discrimination or retaliation. *Id*., ¶¶ 16-17. Alternatively, under the mixed-motive framework, if an appellant proves motivating factor and the agency does not prove by preponderant evidence that it would have taken the same action in the absence of discrimination, the appellant has established but-for causation. *Id*., ¶ 18. An appellant may choose to show but-for causation under the pretext framework or under the mixed-motive framework, or by proceeding under both theories simultaneously. *Id*., ¶ 19.

Based on our review of the record, we find that EEO retaliation was a but-for cause of the enforced leave action, because the agency's stated reason for placing the appellant on enforced leave was unworthy of belief. Namely, we find the agency's interpretation of the appellant's medical restrictions to be disingenuous in light of the information known by the appellant's supervisor at the time of the enforced leave. As early as December 2012, the appellant's supervisor was aware of the appellant's hearing issues, and she knew that the appellant transferred to the mini-circuit assignment to reduce her noise exposure. IAF, Tab 22 at 124, HR (testimony of the appellant's supervisor). Furthermore, in July and August 2014, just before her placement on enforced leave, the appellant reminded her supervisor that her tinnitus was exacerbated by the high-frequency noises present at the facility she was temporarily assigned to as relief for other inspectors, and she requested to perform her duties at her mini-circuit assignment, which had "minimal noise exposure." IAF, Tab 21 at 58-63, 72-73, HR (testimony of the appellant). Nevertheless, when the appellant's medical restrictions stated "needs office/desk duties, no noise exposure," her supervisor claimed she believed that the appellant must have "zero" noise exposure, despite that being plainly unreasonable. IAF, Tab 12 at 102, HR (testimony of the appellant's supervisor). Then, when the appellant's medical restrictions were revised, the appellant's supervisor continued to claim that the agency could not offer an environment that would comply, explaining

that, for instance, the appellant may have to walk through an area exceeding 60 decibels to reach an office, or that even noises like the slamming of a file cabinet or the ringing of a phone could raise noise levels above 60 decibels, HR (testimony of the appellant's supervisor).

Contrary to the testimony of the appellant's supervisor, and as detailed above, the appellant's medical restrictions did not include a complete ban on exposure to any environment that may rise above 60 decibels. IAF, Tab 12 at 111, HR (testimony of the appellant's supervisor). This is, in fact, a mischaracterization of the appellant's restrictions. Further, we find this mischaracterization to be suspicious, given that the appellant told her supervisor in the weeks immediately preceding her placement on enforced leave that she could perform her duties at her mini-circuit assignment, and that it was the "constant high-pitched frequency noises" at the large processing plants that exacerbated her condition. IAF, Tab 21 at 58-63, 72-73, HR (testimony of the appellant). We also find it suspicious that the appellant's supervisor asked almost no questions regarding the appellant's medical restrictions. Indeed, absent a single email exchange sent 2 months after the appellant's placement on enforced leave, there is no evidence that the appellant's supervisor asked any questions about the appellant's medical restrictions or inquired as to ways to accommodate her condition. IAF, Tab 21 at 107. In fact, even when the appellant's September 8, 2014 restriction called for "no noise exposure," which is a patently unreasonable restriction, the appellant's supervisor admitted that she asked no questions before placing the appellant on enforced leave. HR (testimony of the supervisor). Such an extreme restriction surely should have generated some questions if the interactive process had been respected.

Finally, the agency's claim that it placed the appellant on leave because it had no environment under 60 decibels is further undermined by the fact that the agency did not measure the decibel levels during the enforced leave period, i.e., September 8, 2014, to March 30, 2015. Although the record does contain

evidence that the agency measured the Creston Valley noise levels in July 2015, IAF, Tab 24 at 71, this does not negate the fact that for 7 months, the agency forced the appellant to remain on LWOP based on what was, in essence, the agency's hunch that it had no environment that measured at less than 60 decibels.

In conclusion, we find that the agency interpreted the appellant's medical restrictions in an unreasonable manner and engaged in little dialogue regarding how to return her to work, despite evidence that the appellant was capable of performing the essential functions of her mini-circuit assignment within her medical restrictions. Therefore, we find the agency's explanation for why it placed the appellant on enforced leave to be unworthy of credence. Coupled with the fact that the appellant's supervisor placed her on enforced leave approximately 6 weeks after the appellant told her that she was working on her EEO complaint, IAF, Tab 21 at 55-56, we find that the appellant has proved that her EEO activity was a but-for cause of the enforced leave action.

Thus, we find that the appellant proved her affirmative defenses of disability discrimination and EEO retaliation. Additionally, in accordance with the Board's June 9, 2022 Remand Order, the agency's enforced leave action is still not sustained.

**ORDER**

We ORDER the agency to cancel the suspension and retroactively restore the appellant to her position for the period from September 8, 2014, through March 30, 2015. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service regulations, as appropriate, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the

agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of

the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[16]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and

---

[16] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[17] The court of appeals must <u>receive</u> your

---

[17] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:              _____
                           Gina K. Grippando
                           Clerk of the Board
Washington, D.C.

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g., TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion. Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.